BROWN, Price Adm'r, Office of Price Administration, v. MARS, Inc.
No. 1366.

District Court, W. D. Missouri, W. D.
Feb. 26, 1943.

Jerome Walsh and Charles Lamkin, Jr., both of Kansas City, Mo., for plaintiff.

Claude R. Miller, of Chicago, Ill., Robert B. Holland, of Dallas, Tex., and Leo B. Parker, of Kansas City, Mo., for defendant.

OTIS, District Judge.

The defendant is engaged in manufacturing and selling candy bars retailing at five cents each and was so engaged during March 1942 and before that time. The Price Administrator on April 28, 1942, under authority, issued a regulation providing, in Section 2, that: "The seller's maximum price for any commodity * * * shall be * * * the highest price charged by the seller during [March 1942] * * * For the same commodity * * *" In the complaint, filed December 14, 1942, the Administrator charged that "on and after May 11, 1942 * * * [the defendant] has continued to manufacture, sell and deliver * * * candy bars * * * and has continued to charge therefor the highest price charged by it * * * during the month of March, 1942" [but that] "on and after May 11, 1942, each and every candy bar manufactured, sold and delivered by defendant * * * was materially reduced in size and weight and as a result * * * all purchasers * * * have received * * * approximately 11% less candy than * * * during * * * March, 1942 * * *; that by reason of said reduction * * * the defendant has increased the price * * * and threatens and will continue to do so * * *" 'A permanent injunction is asked. The essential allegations of the complaint are denied by the answer.

1. Before we can determine whether the charge has been proved by the greater weight of the evidence we must have in mind exactly what the regulation forbids and exactly how defendant is alleged to have transgressed its prohibition. The regulation assumes a seller, it assumes a commodity and it assumes a highest price charged in March, 1942. It prohibits a higher price after March for that commodity. The complaint alleges that the defendant sold candy bars identified by six trade names in March at a given price, that it sold candy bars identified by the same trade names after March, nominally at the same price, but really, since the weight of the candy was decreased, at a higher price, so violating the prohibition of the regulation. The case will be simplified if, for the present, we consider it as referring to one of the six kinds of candy bars and as charging that the defendant sold the "Milky Way" candy bar at a higher price after March than in March, because the "Milky Way" candy bar sold after March weighed less than the "Milky Way" candy bar sold in March.

We are not concerned, of course, with what is charged except in so far as what is charged is relevant to the regulation. The regulation looks to the seller of a commodity. It does not distinguish between the seller who also is a manufacturer and the seller in the drugstore on the corner. In determining whether the prohibition of the regulation has been violated we are not concerned with who was the seller or his volume of business or its nature. (Such matters might be important in a criminal case, after guilt is established.)

What is this commodity called the "Milky Way" candy bar? It is a confection made up of a half dozen or more ingredients in accordance with a secret formula and distinguishable from other somewhat similar confections by a special and indefinable taste. The "Milky Way" bars are approximately, but never exactly, uniform in size. They are sold by the retailer at five cents each. The defendant sells them by the box of twenty-four at 68 cents a box and generally ships them in cartons of twelve boxes. On the wrapper of each "Milky Way" candy bar a net weight is stated. On the sample before us as this is written the net weight is given as "2¼

ounces." That matter is not important, however, since no attempt was made at the trial to show that any candy bar sold by the defendant weighed less than the net weight given on the wrapper. The undisputed testimony was that the actual weights of individual candy bars, generally speaking, slightly exceeded the weights given on the wrappers. The commodity with which we are dealing is the whole piece known as the "Milky Way" candy bar, distinguishable primarily by its taste and also by the fact that its size approximates a uniform size (a "handful"), that its weight approximates a uniform weight and that it sells at retail for five cents. It is certain that the commodity is not (to use a rough illustration) one ounce of sugar and one ounce of syrup and a quarter ounce of cocoa.

### What Has Been Proved?

■ 2. Learned counsel for plaintiff and the competent investigators working with them, by amazing industry and diligence, have, to our satisfaction, established certain facts (stated now preliminarily to formal findings set out hereinafter). They have proved that the average weight of the "Milky Way" candy bar sold on March 31 was 2.67970 ounces and that the average weight of the "Milky Way" candy bar sold on May 12 was 2.61389 ounces. These figures show a diminution in weight of .06581 of one ounce or about 2½ percent. On both dates the weight of the candy bar sold was greater than that stated on the wrapper.

Learned counsel for defendant strenuously deny that any diminution in weight has been proved, but we think it has been proved with that degree of certainty sufficient in a court of justice, where matters cannot be determined as in a vacuum with finely graduated scientific instruments. Also we think it has been proved that the defendant has such control over its product that it can if it desires, without changing the character of the ingredients in the candy bar, increase or decrease at will the average weight of the bars. (While no two bars will weigh exactly the same, the average weight may be approximately controlled.) The average weight might be slightly changed, without any purpose to change the weight, by the substitution of one ingredient, lighter in weight, for another heavier ingredient. The size would remain the same, the quality and taste would remain the same, the commodity would essentially be the same, but the weight would be slightly lessened. It is clear, moreover, that if the change in weight results from the substitution of one ingredient for another (because, for example, a particular ingredient, as sugar, no longer is available as fully as before) the decrease in weight might have no relation to cost of manufacture. The new lighter ingredient might cost more than the old heavier ingredient.

### What Significance?

■ 3. If arguendo we consider that it has been proved that the decrease in weight of 2½ per cent between March 31 and May 12 was purposely brought about and that otherwise there was no change in the "Milky Way" candy bar, does it follow that the prohibition of the regulation has been violated, that a crime has been committed (for an intentional violation of the prohibition is a crime)? We say, arguendo, because, while it has been proved that there was the 2½ per cent decrease we have mentioned (no attempt was made to prove the 11 per cent increase charged in the complaint), there has been no effort to prove that the decrease was purposeful, except as the inference arises from the fact. There has been no negation of other possibilities which might have effected so slight a decrease in weight.

It seems to us that if it be granted that the decrease in weight was the result of deliberate purpose and that no other and entirely innocent explanation accounts for it, still no violation of the regulation is shown. The regulation looks to the price of a commodity. The price of the commodity must not be increased. The price of this commodity has not been increased. The wholesale price was 68 cents a box in March, it was 68 cents a box in May. The retail price was five cents a bar in March, it was five cents a bar in May. The commodity is the same, although its weight varies slightly from time to time. The essence of this commodity is not its weight, but primarily its taste, and after that, its form, its size, and its price. A pound of sugar is not the same commodity as a pound less an ounce. But two Stetson hats are the same commodity, although one may be a trifle larger than the other and weigh an ounce more. We do not suppose the wholesaler of hats, the same in brand and style in May as in March, would be a law violator if the May hats weighed each an ounce less than the March hats, although the

price per hat remained unchanged. The exact weight is no more looked for by the purchaser of a candy bar than by the purchaser of a hat.

■ We borrow, with some modification of verbiage, from our earlier memorandum in this case a statement of the governing principle. It is not any change in weight of a candy bar downward, however small, which spells violation of law. The identity of a five-cent candy bar is not changed with each trifling fluctuation in weight. It might even be necessary to change weight slightly to preserve identity, as when one ingredient is substituted for another heavier ingredient no longer obtainable. There might be, of course, such a change in weight as would constitute a palpable violation, as, for example, if the "Milky Way" bar which sold in March for five cents was cut in two and sold in May as two bars for five cents each. The test is this: Has there been such a decrease in weight, beyond a reasonable tolerance justified by the cheapness and nature of the commodity, the method of its manufacture, and the changing character of its ingredients, as clearly evidences a deliberate intent and purpose to obtain more in money for the same commodity? We think nothing of that kind has been proved here.

### Not to be Magnified.

■ 4. Learned counsel for plaintiff take a larger view of this case than we take and they may be right. They think of the commodity involved (although their complaint describes the commodity as a candy bar) as a box of candy bars or as a carton of boxes or even as a carload of cartons. They multiply the almost infinitesimal decrease per bar by the number of bars in a carload and even by the number sold in a year. And so the case is magnified into one of large proportions. By indulging in various assumptions, which may be the very truth, but which have not been proved, the defendant is shown to have profited by its manipulation of its candy bars in huge amounts. The feared spiral of inflation is poised on a certain spiral of assumption. But the commodity in this case is the five cent candy bar which the defendant sells at 68 cents for a box of twenty-four. If the regulation is violated it is because the bar has been decreased in weight 2½ per cent. The tons of difference (if there is such a difference) in materials used in a year by the defendant as a result of the decrease have nothing to do with the merits of the question involved.

### The Administrator's Opinions.

■ 5. An interesting development in the trial was the effort of defendant to show in evidence that the Administrator on several occasions, when dealing with competitors of defendant, authorized a much greater decrease in the weight of candy bars than that proved against defendant in this case and that he had not considered any such decreases as violative of the regulation. We did not consider such matters were competent in evidence. We announced, however, that, in the argument of the case, counsel for defendant could cite any opinions of the Administrator officially published which bore upon the interpretation to be placed upon the regulation. It is well established law that when a statute or regulation is under consideration the interpretation placed upon it by administrative officials is proper to be considered.

In the argument our attention was called to several opinions of the Administrator in which considerable decreases in the weight of candy bars manufactured by others than defendant were authorized. A particular instance in point was the opinion In re Peter Paul, Inc.[1] (The opinion was filed February 3, 1943, in the National Archives, Division of the Federal Register, and is referred to in the Federal Register for February 5, 1943, wherein an order following the opinion is set out.) Peter Paul, Inc., was authorized to reduce its candy bar known as "Mounds" from 2½ ounces in weight to 1¾ ounces in weight and to sell the bar at the reduced weight at the same price as before. Here, of course, the reduction authorized was more than ten times greater than the maximum reduction proved against defendant.

■ Learned counsel for plaintiff, confronted by this action taken by the Administrator, suggest that defendant also might have had an adjustment which would have permitted it to decrease the weight of its candy bars, if it had asked an adjustment. And the Administrator does have authority to make proper adjustments, which are truly of the nature of adjustments. But he does not have authority to

---

[1] No opinion for publication.

change the law for a particular individual. The regulation is a law. The most zealous advocate of increasing administrative authority would not contend that an administrator can relieve one person from the prohibition of a criminal law to which all other persons are subject. We are not willing to believe that the Administrator would attempt a thing of that kind, a thing so utterly inconsistent with the fundamental principles of our government. We prefer to believe that the action of the Administrator in the case of Peter Paul, Inc., and in similar cases, only evidences his interpretation of the regulation (and we think it was a correct interpretation), that an absolutely uniform weight is not of the essence of such a commodity as the "Mounds" candy bar or as the "Milky Way" candy bar. It is still the same commodity even if there is some trifling decrease in its weight. If it is sold at the same price in May, notwithstanding the decrease in weight, at which it was sold in March, there has been no increase in price.

## Concluding Word.

6. It should be unnecessary to add that the result reached in this particular case is not to be interpreted as dealing with any situation except one equally extreme in its facts. The Price Control Act, 50 U. S.C.A. Appendix § 901 et seq., was a wise exercise of power. The Act has been wisely enforced under great difficulties. Counsel for plaintiff in this case have moved with energy and speed to accomplish the purposes of the Act and of the Administrator. They are entitled to large praise. They would be the last to ask that the great principles of law and equity, which are the same in war as in peace, should be ignored by the courts either generally or in this instance.

## Findings of Fact.

1. The defendant in March 1942 manufactured and sold candy bars intended to be retailed to ultimate consumers at five cents each. Defendant sold them for 68 cents per box of twenty-four delivered.

2. The candy bars were of six kinds and names: "Milky Way," "Snickers," "The 3 Musketeers," "Forever Yours," "Mars" and "Dr. I.Q." Each kind was of a different average weight than the five other kinds. No two bars even of a particular kind were of exactly the same weight. The defendant, however, could determine approximately the average weight of each kind of candy bar.

3. The evidence does not disclose the precise formula for any of the candy bars. Each contained a number of ingredients. The formula for any bar was variable. One ingredient might be substituted for another. The substituted ingredient might be of the same or a different weight.

4. The especially distinguishing characteristic of each kind of candy bar was its taste. The candy bar was sold as a piece of candy, not as so much in weight of sugar, syrup, cocoa, etc. It was a bar of candy, in one piece, convenient to the hand, wrapped in a protective covering, to be sold at retail for five cents.

5. On the wrapper around each candy bar sold by defendant was printed what purported to be the net weight of the candy, as 2¼ ounces. Generally speaking, the actual weight always exceeded the stated weight.

6. The average weight of the "Milky Way" candy bar sold on March 31, 1942, was 2.67970 ounces; the average weight of the same bar sold on May 12, 1942, was 2.61389 ounces; a decrease in weight of .06581 ounces. The average weight of the "Snicker" candy bar sold on March 31, 1942, was 2.86477 ounces; the average weight of the same bar sold on May 12, 1942, was 2.68253 ounces; a decrease in weight of .18224 ounces. The average weight of "The 3 Musketeers" candy bar sold on March 31, 1942, was 2.76321 ounces; the average weight of the same bar sold on May 12, 1942, was 2.68329 ounces; a decrease in weight of .07992 ounces. The average weight of the "Forever Yours" candy bar sold on March 31, 1942, was 2.74768 ounces; the average weight of the same bar sold on May 12, 1942, was 2.78969 ounces; an increase of .04201 ounces. The average weight of the "Mars" candy bar sold on March 31, 1942, was 1.75035 ounces; the average weight of the same bar sold on May 12, 1942, was 1.75127 ounces; an increase of .00092 ounces. The average weight of the "Dr. I.Q." candy bar sold on March 31, 1942, was 2.12826 ounces; the average weight of the same bar sold on May 12, 1942, was 2.11119 ounces; a decrease of .01707 ounces. This decrease (as to most candy bars) after March prevailed until the issuance of the restraining order in December 1942.

7. The evidence does not disclose from what the decreases set out in Finding No. 6 resulted, whether from the substitution

of lighter for heavier ingredients or from a deliberate purpose to decrease or increase weights.

8. The defendant, unless restrained, will continue to sell candy bars which vary in weight from those sold in March 1942 by variations as great as those set out in Finding No. 6.

9. There was no sufficient proof of the facts charged in the Second Count of the Complaint.

### Conclusion of Law.

If a candy bar is decreased in weight in an amount no greater than that proved in this case and is sold after the decrease at the same price per bar as before the decrease, there has been no increase in price within the meaning of the regulation of April 28, 1942.

### Exceptions Allowed.

Plaintiff is allowed an exception to the conclusion of law hereinbefore stated and to the decree sub-joined.

### Decree.

This cause coming on to be heard on the complaint and answer, on the evidence introduced and on the argument of counsel, and the Court having filed its Memorandum Opinion, Findings of Fact and Conclusion of Law, and being fully advised in the premises, it is by the Court ordered, adjudged and decreed that the complaint be and the same is dismissed. So ordered.